ORENBAUM BROS. v. SOWELL BROS.

(Court of Civil Appeals of Texas. Dallas. Feb. 1, 1913.)

**1. DAMAGES (§ 78*)—CONTRACTS—PENALTY—LIQUIDATED DAMAGES.**

A stipulation to pay a specified sum in case of breach of contract not to engage in a profession or business within specified limits is construed as an agreement for liquidated damages, instead of a penalty, in the absence of a showing that the amount is unjust or disproportionate to the damages resulting from a breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

**2. DAMAGES (§ 77*)—CONTRACTS—"PENALTY"—"LIQUIDATED DAMAGES."**

Whether a sum agreed to be paid as damages for violation of a contract is liquidated damages or a penalty depends on the meaning and intent of the parties as gathered from the contract, and the peculiar circumstances of the subject-matter thereof.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 156; Dec. Dig. § 77.*

For other definitions, see Words and Phrases, vol. 5, pp. 4175–4179; vol. 6, pp. 5272–5276; vol. 8, p. 7750.]

**3. DAMAGES (§ 78*)—CONTRACTS—PENALTY—LIQUIDATED DAMAGES.**

A contract for the exchange of a stock of merchandise for realty, which provides that each party shall execute to the other a note for $1,000 as forfeit if the signer thereof fails to carry out his part of the contract, and which declares that the contract with the notes shall be held by a bank pending performance, and, in case either of the notes is forfeited, the same 'shall be delivered by the bank to the proper party, and that, after all other features are completed, the contract shall be delivered to the owner of the realty "on the item of" the owner of the merchandise "not engaging in business as herein stipulated," provides for a forfeiture of $1,000 if either party refuses to make the exchange, and if the owner of the merchandise after making the exchange breaches his agreement not to engage in business, and the amount is liquidated damages in the absence of a showing that the amount is unjust.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

Appeal from District Court, Hill County; C. M. Smithdeal, Judge.

Action by Sowell Bros. against Orenbaum Bros. From a judgment for plaintiffs, defendants appeal. Affirmed.

W. E. Spell, of Waco, and Collins & Cummings, Vaughn & Hart, and Morrow & Morrow, all of Hillsboro, for appellants. V. L. Shurtleff and Wear & Frazier, all of Hillsboro, for appellees.

RASBURY, J. Appellees sued appellants in the district court upon a nonnegotiable promissory note for $1,000, signed by appellants, payable to appellees, and recovered verdict and judgment for the amount of the note and interest.

The following are the facts necessary to a determination of the appeal: Appellants were in business in Hillsboro, Tex., and ap-

pellees desired to acquire their business. An agreement was reached by which appellants agreed to convey to appellees their stock of plumbing and sheet metal goods, plumbers' and tinners' tools, and certain fixtures, etc. The merchandise was estimated to be of the value of $5,000, but was to be invoiced at wholesale prices, freight added. Appellees were to pay for the stock of merchandise with certain real estate situated in Hillsboro, the same being particularly described and of the agreed net value of $4,650, and by assuming $350 of debts owing by appellants against said merchandise. Immediate invoice was to be taken of appellants' merchandise, at completion of which appellants were to convey said merchandise to appellees by "regular" bill of sale with warranty of title. At same time appellees were to convey the described real estate to appellants by general warranty deed. As part of the consideration moving to appellees to make the trade of properties, appellants agreed not to engage in competition with appellees for a period of two years from date of the contract. The portion of the contract around which the controversy revolves is, in full, as follows: "As evidence of good faith, said Sowell Bros. herewith execute to said Orenbaum Bros. note for $1000.00, and said Orenbaum Bros. execute to said Sowell Bros. note for $1,000.00, each of said notes being executed as forfeits and to become due and payable on demand in case the signors of same shall fail or refuse to carry out their part of this contract, said parties estimating their respective losses at said amount for such failure and same being agreed upon as liquidated damages. * * * This contract with said notes to be held by the Sturgis National Bank pending performance, and in case either of said notes is forfeited under the terms hereof, same shall be delivered by said bank to the other parties, and after all other features are completed this contract shall be delivered to said Sowell Bros., on the item of Orenbaum Bros. not engaging in business as herein stipulated." The preliminary agreement was observed in all respects, appellants conveying the merchandise and appellees the real estate. When this was done, the contract and note were delivered to appellees as directed by its terms, at least, we presume such delivery was made, since suit was filed thereon, although the record is silent on this exact point. Subsequent to the exchange of properties and before the expiration of two years appellants did again enter into business in competition with appellees. As we have stated, this suit resulted in verdict and judgment for appellees.

Under their first and second assignments of error, appellants assert the proposition that it is settled law that courts are inclined to treat sums of money agreed to be forfeited upon breach of a contract as penalties,

rather than liquidated damages, particularly so when the agreement contains several distinct and independent covenants upon which there may be several breaches, and that hence the trial court in the instant case erred in treating the sum specified in the contract between appellants and appellees as liquidated damages. In connection with this assignment, it may be conceded that the agreement contained three covenants. Appellees agreed to convey to appellants their described real estate, appellants agreed to convey to appellees their merchandise, and to remain out of competing business for two years. The question here involved, it seems, arises upon every contract providing for the payment of a forfeit as agreed liquidated damages, notwithstanding the courts have passed upon a vast number of similar cases involving varying facts.

[1] An accepted authority has said in reference to the collection of forfeitures provided for in contracts agreeing not to engage in a particular business, that, "where a contract has been made not to engage in any particular profession or business within stated limits, it has been the policy of the courts to construe such an agreement as liquidated damages rather than as a penalty, in the absence of any evidence to show that the amount of damages claimed is unjust or oppressive, or that the amount claimed is disproportionate to the damages that would result from the breach or breaches of the several covenants of the agreement. While the decisions in this class of cases are usually based upon the fact that the damages are uncertain and cannot be estimated, it has also been held that where there is a promise to pay a particular sum in case of breach, or where the payment of the sum named is the very substance of the agreement, a recovery may be had for the sum named." 13 Cyc. 99. See, also, Tobler v. Austin, 22 Tex. Civ. App. 99, 53 S. W. 706; Rucker v. Campbell, 35 Tex. Civ. App. 178, 79 S. W. 627; Norman v. Vickery, 128 S. W. 452. The cases cited sustain the rule in Cyc. The difference in the facts in the cases cited and those in the instant case is that in the Tobler and Rucker Cases, supra, the agreement to pay the forfeit was contained in the transfer of the property, while in the Norman Case, supra, Norman had agreed to forfeit a sum of money if he failed to convey certain lands. In short, in each of said cases the agreement comprehended the doing or not doing of but one particular thing. In the instant case the contention is made that the contract involved the performance of more than one condition by appellants, and since the evidence shows a breach of but one of the conditions, to wit, the entering into competition with appellees, the rule applies that "a claim for a stipulated sum as liquidated damages for a nonperformance of a partially performed contract cannot be enforced." 13 Cyc. 1104.

While we have found many Texas cases sustaining the general rule as announced by Cyc., and sustaining the collection of the forfeiture when it appeared conjectural, and in the nature of things, uncertain, what would be lost to the contracting parties in case of breach and in the absence of any showing that the amount fixed was unjust or oppressive or disproportionate to what actually resulted from the breach, we have been unable to find the precise question determined in this state. In Lone Star Salt Co. v. Railway Co., 99 Tex. 434, 90 S. W. 863, 3 L. R. A. (N. S.) 828, the Supreme Court put the question, but declined to determine it. Mr. Justice Williams there said: "The reason why it is urged that the sum named should be held to be a penalty and not stipulated damages, although the parties show their intention to make it such, is that it is in terms, payable for the smallest breach of, as well as for a total failure to perform, the contract in any one year. Whether this fact of itself shows the stipulation to be a penalty or whether the provision makes the named sum payable as liquidated damages only, for an entire failure to perform for a year, leaving partial failures unprovided for, are questions which we deem it improper to prejudge," etc. In an opinion by Mr. Justice Neill of the Fourth Court of Civil Appeals, in Carruthers et al. v. Gay et al., 91 S. W. 593, plaintiff was permitted to recover a sum fixed and agreed upon as stipulated damages for the partial breach of a contract providing that the amount should be paid upon the violation of "any one or more of the express conditions" of the agreement. The opinion does not disclose, however, whether the defense asserted in the instant case was claimed in that case.

[2] The authorities, however, are all agreed that "whether a sum agreed to be paid as damages for violating an agreement be considered liquidated damages or only a penalty must depend on the meaning and intent of the parties as gathered from a full view of the provisions of the contract, the terms used to express that intent, and the peculiar circumstances of the subject-matter of agreement." Yetter v. Hudson, 57 Tex. 604; Eakin v. Scott, 70 Tex. 445, 7 S. W. 777; Norman v. Vickery, supra.

[3] Under the rule that the agreement should be construed according to the intention of the parties, what can be gathered from the agreement in the instant case in that respect? Simply and fairly stated and omitting details, appellants say we will exchange our stock of merchandise for your real estate. Appellees accept the offer upon condition that appellants will not enter into competition with appellees for a period of two years. This is agreed to. Thereupon they execute the preliminary contract at issue in this case and place with the bank their respective notes for $1,000 each, to be

forfeited as the case may be "in case the signers of same shall fail or refuse to carry out their part of this contract." "Their part" of the agreement as applied to appellees was to convey the real estate or forfeit the $1,000. As applied to appellants, "their part" of the agreement was to convey the stock of merchandise, etc., and not compete in business with appellees for a period of two years. We think it is correct to say that the intention of the parties in the light of the agreement was that appellants should forfeit $1,000 upon refusal to convey the merchandise or after such conveyance upon entering into competition with appellees within the stated two years. We can see no reason why parties may not make such agreements, and know no rule of law that projects itself into such an agreement and destroys such intention. It is not contended that the amount agreed upon is unjust or oppressive or disproportionate to the damages that would result from a breach of the agreement. The character of the property exchanged and the probable loss from competition naturally makes the resulting damages uncertain and difficult of estimation, which is a circumstance indicating it was the intenton of the parties to agree on the amount of liquidated and agreed damages in any event on failure of either to perform their "part" of the contract. It also occurs to us that any doubt that the intention of the parties was as we have indicated is removed by the clear provisions of the last clause of the contract. Said clause provides that the written agreement and both notes shall be deposited with a local bank pending performance, meaning the exchange of properties by proper and legal transfers, and in case either party fails to convey as agreed his note shall by the bank be delivered to the injured party. The clause then recites, in substance, that, after the conveyance of the respective properties, the contract shall be delivered to appellees, "on the item of Orenbaum Bros. not engaging in business as herein stipulated." This clause in our opinion leaves no room for doubt concerning the intention of the parties. It shows that the parties intended that in the event either refused to make the exchange they were to forfeit the agreed sum. If, however, no hitch arose and each executed the mutual conveyance, then the contract was to be delivered to appellees. In short, until appellees had performed their part of the agreement, the bank was to hold the contract for both parties. But, as soon as appellees had performed the one condition they were required to perform and their liability had ceased, the bank was to give them the agreement to protect them against competition on the part of appellants.

We have carefully examined the second, third, fourth and fifth assignments of error, and in our opinion they present no reversible error, and hence it becomes our duty to affirm the judgment of the trial court.