**COASTAL BEND MILK PRODUCERS ASSOCIATION, Appellant,**

v.

**Rudolph GARCIA et al., Appellees.**

No. 14133.

Court of Civil Appeals of Texas.

San Antonio.

April 24, 1963.

Frank D. Masters, San Antonio, Harold S. Nelson, New Braunfels, Homer E. Dean, Jr., Alice, for appellant.

Perkins, Floyd, Davis & Oden, Alice, for appellees.

BARROW, Justice.

This is an appeal by Coastal Bend Milk Producers Association, a corporation organized under the Co-operative Marketing Act of Texas, Art. 5737 et seq., Vernon's Ann. Civ.Stats., from a temporary injunction granted forty-five of its producer members, enjoining the Borden Company from making remittance direct to the Association for payment of milk sold the Borden Company by these producers. The Borden Company has not appealed. The producers sought the injunction to prevent the Association from deducting, as liquidated damages, a sum equal to twenty per cent of the gross sale price of the milk sold by the producers, pending trial on the merits.

The sole question is whether the trial court abused its discretion in granting the temporary injunction. The purpose of the issuance of a temporary injunction is to preserve the status quo in regard to the matter in controversy or prevent irreparable injury or damage to applicant pending final determination of the case on its merits. Ordinarily, it is not a substitute for, nor does it serve the same purpose as, the hearing on the merits. Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417; West Texas Gulf Pipe Line Co. v. Hardin County, 159 Tex. 374, 321 S.W.2d 576; Godley v. Duval County, Tex.Civ.App., 361 S.W.2d 629. In Texas Foundaries, Inc. v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460, our Supreme Court held that:

> "The trial court is clothed with broad discretion in determining whether or not to issue a temporary injunction to preserve the rights of the parties pending a final trial of the case, and when that discretion is exercised its order should not be overturned unless the record discloses a clear abuse of discretion."

It is also settled that to warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549.

The appellant Association is composed of approximately 250 producer members in the Corpus Christi milk market area. The members joined the Association by a written contract and there are three forms of contracts involved in this appeal. In July, 1962, the Board of Directors determined that it would be financially beneficial for the Association to haul its own milk in order to have equipment to haul surplus milk, and passed a resolution requiring the producers to deliver their milk to the Association plant, to-wit, a mobile tank truck. The

appellee producers have dairies in Jim Wells, Duval and Jim Hogg Counties, and for many years prior to July, 1962, their milk was hauled by two non-association members, Rudolph Garcia and C. W. Clark. These private carriers had purchased expensive equipment for this purpose and the Association was unable to work out a satisfactory arrangement to purchase that equipment. Appellee producers were not satisfied with the new arrangement and permitted these private carriers to continue to haul their milk. The Association will continue to sell the milk to the Borden Company but wants to haul the milk of all members to the Borden Company in Association trucks. The record reflects that thirty-one of the appellee producers submitted a written resignation, all dated July 9, 1962, whereby each producer tendered his resignation to take effect at the earliest possible date permitted under the terms of his contract, and giving the Association's treatment of the private carriers as the reason for his resignation. The Association has never accepted these resignations and questions their validity. It would be premature for us to decide the validity of the resignations on this interlocutory appeal.

On October 3, 1962, the Association filed this suit against Garcia and Clark to enjoin them from interfering with the Association's hauling of its producer members' milk. Subsequently the Association joined, as defendants, forty-six of its producer members, including the appellees herein, and alleged that they refused to deliver the milk to the Association for handling and hauling to market, and prayed for judgment against each of said producers for the amount provided in his membership contract, as liquidated damages. On September 27, 1962, and again on October 31, 1962, the Association made written request of Borden Company to make payment to it for all milk sold by the producer members. This request was made in accordance with an order of the Secretary of Agriculture,

styled, "ORDER REGULATING THE HANDLING OF MILK IN THE CORPUS CHRISTI, TEXAS MARKETING AREA," and identified as "ORDER NO. 130." Sec. 1130.80 of said order authorizes a cooperative association which is authorized by its members to collect for their milk to make a written request of the handler to pay the association for milk received from its member producers. Pursuant to this request, on November 13, 1962, the Borden Company paid the Association for the milk received from its producer members. The Association deducted liquidated damages of twenty per cent of the gross sale price of the milk before making payment to the appellee producers. The Association's manager testified that the Association would continue to deduct the liquidated damages pending the trial unless enjoined by the court. He admitted that such a deduction would probably force several of the appellees out of business. Appellees filed a cross-action against the Association, wherein they alleged that the liquidated damages were withheld without authority, and asked for a temporary injunction enjoining Borden from paying the gross receipts from the sale of their milk to the Association. The trial court granted a temporary injunction and expressly found that the Association, unless enjoined, would continue to deduct its purported liquidated damages and that appellees would suffer irreparable injury and damage. The trial court expressly restored the method of handling milk and paying for same to the status as of October 3, 1962, when the suit was filed.

Appellant asserts that the membership contracts and Marketing Order 1130 authorized all the actions taken by the Association, and this was the true status quo as of October 3, 1962. It is seen, however, that neither any form of the contract agreements, the by-laws of the Association, nor Marketing Order 1130, authorized the Association to deduct or retain liquidated damages from money belonging to its members which might come into its possession.

The by-laws provide that liquidated damages shall be determined by the member's agreement. One form, identified as Ex. No. 6, was signed by twenty-six of the appellee producers. It provides in part that:

"SEVENTH: The member hereby agrees that if at any time while this agreement is in force and effect, he neglects or refuses to deliver said milk or dairy products to such person, or persons, * * * as may be designated from time to time by the association then, and in that event, the member will pay to the association a sum of money equal to twenty per cent of the gross sale price of such milk or dairy products as the member may deliver to any person, or persons, * * *."

It further provides that the payment is agreed upon as liquidated damages.

The other two forms of membership agreements, signed by the other nineteen appellee producers, provide for liquidated damages to be assessed against a member who violates or breaches his membership agreement. These agreements provide that these damages shall be assessed by the Board of Directors in a sum not less than $10.00 and not exceeding $200.00. The evidence is undisputed that the Board of Directors has never assessed any liquidated damages. The Association asserts that on November 9, 1962, the Directors passed a resolution to make all membership agreements read the same as Ex. No. 6. ARTICLE III, Section 7, of the by-laws provides:

"Execution of membership agreement. Members must sign membership agreement. All those seeking membership must sign agreement in order to become a member of this association. The Board of Directors is empowered to determine the form and contents of membership agreements and to amend same."

There is no contention that any of the latter nineteen appellee producers in any way accepted or ratified any change in their membership agreements after the commencement of this litigation. These appellees have shown a probable right that without their consent or ratification this resolution of the Directors would not affect their executed agreement as to liquidated damages.

■ The membership marketing contracts are authorized by Art. 5753, Vernon's Ann.Civ.Stats., and there is no provision in this statute permitting the Association to deduct the liquidated damages from funds owing to the producer members, although there are provisions for the Association to protect itself against threatened breach of the marketing contract.

■ Appellant has failed to show any statutory or contractual authority to make this deduction, and in view of the evidence establishing that, unless enjoined, it would continue to withhold this deduction from the checks of appellee producers, it is our opinion that appellees showed a probable right and a probable injury. Stidham v. Laurie, Tex.Civ.App., 133 S.W. 1082; Rucker v. Campbell, 35 Tex.Civ.App. 178, 79 S.W. 627.

■ Appellant asserts that the trial court abused its discretion in that the State Court does not have jurisdiction to grant this relief. It is seen that appellant commenced this suit and asked for judgment for its liquidated damages. When it sought to collect the damages from funds of appellees before securing the judgment, appellees had the right to seek injunction in the same forum selected by appellant. Panos v. Foley Bros. Dry Goods Co., Tex.Civ.App., 198 S.W.2d 494; Spence v. State National Bank, Tex.Com.App., 5 S.W.2d 754. The Federal Marketing Order does not authorize appellant to deduct its liquidated damages. The only issue in dispute is the authority of appellant to deduct the twenty per cent liquidated damages prior to judgment. We do not believe the trial court abused its discretion in maintaining the

status quo pending determination of the suit.

■■■ Appellant asserts that, in any event, the trial court abused its discretion in requiring only a $5,000.00 bond for the issuance of the temporary injunction, as the liquidated damages would amount to about $8,600.00 each month, and the case is not set for trial until June, 1963. This is a matter addressed to the sound discretion of the trial court, and in view of the fact that appellant is now holding over $24,000.00 of assets belonging to appellees, and the issues raised by appellees concerning the construction of the agreements as to the amount and application of liquidated damages, we cannot say that the trial court abused its discretion.

The judgment is affirmed.