**HAMILTON MILL & ELEVATOR CO. v. RAYFORD et al. (No. 13.)**

(Court of Civil Appeals of Texas. Waco. November 8, 1923.)

**1. Sales ⬤═202(6)—Whether title to corn vested in buyer while car in transit held a question of intention.**

Whether title to a car of corn sold while in transit vested in the buyer without acceptance of the corn or payment of the draft for the purchase price, was a question of intention, and the fact that the corn was consigned to seller's order with a draft on buyer for the purchase price did not necessarily reserve title in seller until purchase money was paid.

**2. Sales ⬤═340—Remedy of seller is the same whether title passed or not in sale.**

Where seller complies with all the terms and conditions of the sale, his remedy is the same whether the sale was in fact executed by the passing of title, or whether it remained executory.

Appeal from District Court, Coryell County; J. B. Keith, Judge.

Action by the Hamilton Mill & Elevator Company against J. T. Rayford and others.

Judgment for defendants, and plaintiff appeals. Reversed and remanded for another trial.

Dewey Langford, of Hamilton, T. R. Mears, of Gatesville, and Weatherby & Rogers, of Waco, for appellant.

McClellan & Cross and Stinnett & Stinnett, all of Gatesville, and S. P. Ross, of Waco, for appellees.

GALLAGHER, C. J. The Hamilton Mill & Elevator Company, appellant herein, sued J. T. Rayford, one of the appellees herein, for $1,784.41, alleging that the same was the amount due for one car of corn sold by it to said Rayford, less a certain credit arising from a resale of the same by it upon refusal of said Rayford to receive and pay therefor. Appellee made the Coryell County Elevator & Grain Company, the Kansas City Southern Railway Company, the St. Louis Southwestern Railway Company of Texas, Walker D. Hines, Director General operating said railways, and James C. Davis, Agent, parties defendant, and sought recovery against them, or such of them as might be found liable in the event appellant recovered anything against him. There was a trial before the court, and judgment in favor of appellee Rayford that appellant take nothing against him, and also in favor of all of the parties defendant so impleaded by him. The Hamilton Mill & Elevator Company has appealed.

Appellant, on or about the 15th day of February, 1918, bought a particular car of corn then in transit over the Kansas City Southern Railway from Kansas City, Mo., to Texarkana, Tex., and at its instance said car was diverted to it at Hamilton, Tex. This car had been inspected, weighed, and shipped out of Kansas City on February 12, 1918. Thereafter, on February 27th appellant sold this car of corn to the appellee Rayford. The sale was made over telephone. The corn was represented to be No. 3 mixed, and appellee Rayford agreed to pay therefor at the rate of $1.84 per bushel, delivered at Gatesville, Tex., and further agreed that settlement should be made on official weights and grades. On the same day he mailed to appellant a written confirmation of the sale.

Appellant paid for the car of corn, and received a bill of lading for the delivery of the same by the carrier to it at Hamilton. It surrendered this bill of lading to the carrier, and secured a new bill of lading, diverting the car to Gatesville, consigned to shipper's order, notify J. T. Rayford. It then drew a draft on appellee Rayford for the purchase price as agreed upon, and attached thereto said bill of lading and official inspection and weight certificates dated at Kansas City, February 12, 1918, and forwarded the same to Gatesville for presentation to and payment by appellee. The car

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of corn arrived at Gatesville on March 7, 1918. Appellee failed to pay the draft and receive the corn, and on March 9th appellant took charge of the same, and found the corn heated, run together, and caked. Appellant immediately applied the proper treatment for corn in that condition, and, as soon as said corn was in marketable condition, sold the same for appellee's account for the best price obtainable, and, after deducting all expenses attending such treatment, applied the remainder of the proceeds of such sale on the purchase price of said car of corn.

The official inspection certificate attached to said draft and bill of lading was introduced in evidence, and showed the car of corn to be No. 3 mixed, as stipulated in the contract of purchase. The testimony showed that the expression "official grades" as used in the contract of sale in this case meant the grades established by official inspectors employed by the government at the point of shipment at the time the shipment started, and that such grades were always evidenced by certificates such as the one attached to the draft drawn by appellant on appellee. The testimony further showed that it was the universal custom of grain dealers to accept such certificates without further proof as establishing the official grade of the grain described therein. There was testimony tending to show that the condition of the corn when taken possession of by appellant as above described arose while the car was in transit, and some time after the official grading thereof, and that the same was attributable to delay in transportation.

The only reason assigned by appellee for not receiving the corn, so far as shown by the testimony, was that the party to whom he claimed to have sold the same refused to accept it and pay therefor. There was no evidence that the car of corn was examined either by appellee or by the party to whom he had sold the same, nor that it was rejected on account of its condition. Appellee introduced no evidence and has not filed a brief in this appeal.

The court found as a fact that appellant and appellee both intended, and that the contract between them contemplated, that the car of corn should be of the stipulated grade at the time it was tendered to appellee in Gatesville; that said car was inspected by appellee on its arrival in Gatesville, and rejected on account of its condition; that appellee did not agree to be bound by the weights and grades shown by the official inspection on February 12, 1918, and that, if he did so agree, his agreement did not contemplate such a gross and material difference in grade as existed in this case.

The judgment in favor of appellee Rayford is predicated in whole or in part on these findings. Each of the same is assailed by appellant on the ground that it is without support in the evidence. After a careful consideration of the statement of facts submitted, we have reached the conclusion that appellant's contention is correct, and its assignments complaining of said findings and of the judgment of the court based thereon are sustained.

[1] Appellant insists that the sale to appellee was executed, and that title to the corn vested in him while in transit without acceptance of the corn or payment of the draft for the purchase price thereof. The question of when title passes to the purchaser in such cases is in its last analysis one of intention, to be gathered from the facts and circumstances in each particular case. The fact that the corn was consigned to appellant's order with a draft on appellee for the purchase price attached to the bill of lading therefor did not necessarily reserve title in appellant until the purchase money was paid. Scott & Mayhall v. Lubbock Grain & Coal Co. (Tex. Com. App.) 252 S. W. 164.

[2] We do not think it material in this case to determine whether title to the corn passed to appellee or not. If appellant complied with all the terms and conditions of the sale, its remedy is the same whether sale was in fact executed by the passing of title or whether it remained executory. White v. Matador Land & Cattle Co., 75 Tex. 465, 12 S. W. 866; Waples & Co. v. Overaker & Co., 77 Tex. 7, 11, 13 S. W. 527, 19 Am. St. Rep. 727; Bowden v. Southern Rock Island Plow Co. (Tex. Civ. App.) 206 S. W. 124, 126.

The judgment of the trial court is here reversed, and the cause remanded to the district court for another trial.